Law Library

## IN THE SUPERIOR COURT
## OF GUAM

FIDELITY ENTERPRISES, LTD.,
a Guam Corporation

           Plaintiff,

    vs.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
a Foreign Corporation,

           Defendant.

Civil Case no. CV0753-05

**DECISION AND ORDER**
re: Motion in Limine

## INTRODUCTION

This matter came before the Honorable Judge Michael J. Bordallo on December 13, 2012. Plaintiff was represented by Attorney Wayson W. S. Wong. Defendant was represented by Attorney Terrence E. Timblin. After considering the matters presented, the Court now issues the following decision and order.

## BACKGROUND

This action stems from a complaint for damage incurred to Plaintiff's Barrigada building from Super Typhoon Pongsona on December 8, 2002. At all times relevant to the complaint, Plaintiff's structure was insured by Defendant. The Plaintiff's building was insured for $1,700,000.00. The insurance policy required that the insured submit a written notice to the Defendant of any loss. It also required the submission of a sworn proof of loss within sixty days.

On February 4, 2003, Defendant received a letter from Adjusters International indicating that it had been retained by Plaintiff to assist it in asserting a claim for the damaged property. On February 7, 2003, Plaintiff submitted to Defendant a sworn proof of loss claim indicating that the amount of damage was undetermined. On March 13, 2003, Plaintiff

submitted a letter to the Defendant that indicated it would claim a loss of $1,639,634.00. The amount claimed as a loss was based upon an appraisal of loss conducted by Ryder Hunt. On May 9, 2003, Defendant determined, after conducting an evaluation of the damage to Plaintiff's property, that Plaintiff's property damage claim had a value of $414,544.00. On the same date, taking into account Plaintiff's deductible, it made Plaintiff an adjusted final offer of $382,544.00 for a full settlement of its claims.

In response to Defendant's offer, on May 11, 2003, Plaintiff sent Defendant a letter demanding payment of the undisputed amount of $382,544.00, enforcement of the appraisal provision of insurance policy and naming Brain W. Molineaux as its appraiser. Plaintiff also submitted a sworn proof of loss for $1,587,756.00 to the Defendant. Following Plaintiff's appraisal demand, Defendant named Gilbert Malmgren as its appraiser on May 30, 2003. On or about June 30, 2003, William Beyer was appointed as umpire over the appraisal process. On July 31, 2003, Defendant paid Plaintiff $382,544.00.

Plaintiff withdrew its demand for appraisal on October 14, 2003. Subsequent to this withdrawal from the appraisal process, Plaintiff disengaged itself from the services of Adjuster's International and unsuccessfully attempted to engage Defendant in negotiations. It then retained Attorney Wong. On May 7, 2004 Plaintiff renewed its demand for appraisal and named Mark Ruth as its appraiser. Sometime after May 7, 2004, Defendant agreed to reopen the appraisal process and renamed its same appraiser. The appraisers for the parties reappointed William Beyer as Umpire. Between May 7, 2004 and the time of Plaintiff's final request to withdraw from the appraisal process, both parties continued in the appraisal process. They negotiated the location of the hearing and arranged for the transportation and availability of witnesses.

After notifying Plaintiff of its position that time for filling suit had expired, it is

undisputed that Defendant continued to participate in the appraisal process. Defendant suggested that the hearing be moved and deadlines be changed, intimated the possibility of settlement, and met to discuss settlement through the rest of the month of April 2005. Plaintiff, on July 5, 2005, withdrew its demand for appraisal and on August 1, 2005 it filed the instant law suit. The complaint alleges the following five counts: (1) breach of contract for Defendant's failure to pay additional amounts owed to Plaintiff under the insurance policy; (2) breach of contract claim for Defendant's failure to allow its appraiser to try to agree with Plaintiff's appraisers on the amounts of losses[1]; (3) breach of contract for Defendant's wrongful denial of insurance coverage on or about April 11, 2005 [2]; (4) breach of the implied covenant of good faith and fair dealing under the policy; and (5) oppression and exemplar or punitive damages.

On June 7, 2012, the Court issued a decision and order on Defendant's motion for partial summary judgment dismissing counts 2, 3, 4, and 5 of the complaint and the claim for the generator. The Court also granted Defendant's motion in limine to exclude testimony of Robert W. Grantham. Before the Court remains one count for breach of contract for Defendant's failure to pay additional amounts owed to Plaintiff under the insurance policy. On October 1, 2012, Defendant filed a motion in limine re: mention of economic disparity between the parties. Subsequently, on November 21, 2012, Defendant filed another motion in limine requesting to exclude Plaintiffs proposed exhibits and Plaintiff filed a motion in limine requesting to limit the testimony of Alun Irvine.

## DISCUSSION

---

[1] Plaintiff also seeks damages, attorney's fees, and interests for such breach.

[2] Plaintiff also seeks damages, attorney's fees, and interests for such breach.

### a. Defendant's Motion In Limine re: Plaintiff's Proposed Witnesses

On June 7, 2012, the Court issued a decision and order on Defendant's motion for partial summary judgment dismissing count 2, 3, 4, and 5 of the complaint. Defendant contend Plaintiff's proposed exhibits for trial are not relevant to the remaining cause of action, which is for breach of contract claim for failure to pay remaining damages. The only issue to be presented to the jury is the amount of the loss as computed pursuant to the terms and conditions of the policy. The Court will now address each of Defendant's claims regarding Plaintiff's exhibits.

First, Defendant asserts that Plaintiff witness list includes witnesses which will purportedly testify about problems Plaintiff had obtaining payment for its losses from Defendant. Defendant requests that any such testimony be prohibited at trial. In accordance with Defendant's Motion in Limine re Mention of Economic Disparity between the Parties, filed on October 1, 2012, Defendant seeks to preclude any testimony regarding Fidelity as a small local company and National Union as a large outside company. Defendant asserts it is improper to attempt to demonize large out of state (or off-island) corporate entities just because they are large out of state (or off-island) corporate entities. *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265 (5th Cir. 1998). Plaintiff opposes this argument and argues the economic disparity between the parties is the basis for Fidelity's alleged unfair treatment. Moreover, such evidence is relevant to what value the jury should place on the typhoon damages. The Court disagrees and finds alleged unfair treatment only relevant towards the bad faith claims, not towards the valuation of the typhoon damages. And since all bad faith claims have been dismissed, the Court finds testimony regarding problems Plaintiffs had obtaining payment for its losses from Defendant prejudicial to the jury. Similarly, any proof of the

disparity in the size of the parties is not relevant to the actual damages incurred by the Plaintiff.

Next, Defendants seeks to exclude Mr. Brian Murphy and/or Mr. Henry Metcalfe, Past and Present Claims Personnel for Guam Insurance Adjuster's [GIA] and National Union's Representative, as witnesses. Defendant reasons that Mr. Murphy is no longer with GIA and had left the island, thus is unavailable for trial. As for Mr. Metcalfe, he was not on island during the typhoon, appraisal proceedings or the early stages of this litigation. Thus, Mr. Metcalfe nor any other employee of GIA have any apparent knowledge that would be relevant to the determination of the loss because the claim was contracted out to Alun Irvine. On the other hand, Plaintiff contends Mr. Metcalfe testimony will establish the foundation for the admissibility of that document as an admission by National Union. GIA business records are relevant to support National Unions higher evaluation of the loss. Moreover, the evidence of the low estimate of typhoon damage repairs will show a pattern and practice of unfairness by National Union. The Court recognizes Plaintiff's attempt to introduce evidence of the allege unfair treatment and has already ruled such evidence inadmissable. Alun Irvine is listed as a witness and can testify as to the documents sought to be introduced. The estimates included in the emails are sufficient for purposes of assisting the jury to determine the appropriate value of the typhoon damages and can, if appropriate, be admitted as admissions by the Defendant of the value of loss.

Thirdly, Defendant seeks to exclude the testimony of Mr. Calvo's alleged persuasive efforts towards Fidelity to reduce the insured amount. National Union allegedly persuaded Fidelity to lower its insurance coverage from Two Million Six Hundred Fifty Thousand Dollars ($2,650,000.00) to One Million Seven Hundred Thousand Dollars ($1,700,000.00). Plaintiffs intend to show through Mr. Calvo testimony that it was National Union who suggested the

lower amount of total coverage. Defendant rebuts this argument and submits that it makes no difference what the precise insured value is. The Court agrees and finds Mr. Calvo's testimony not relevant to the issue of actual damages incurred and the cost of repairs.

Defendant also seeks to exclude testimony from representatives from Utilities Service Specialists. Their testimony should be excluded because the claim for the generator has been dismissed. Plaintiff agrees and withdraws that representative as its witness.

Next, Defendant seeks to exclude any testimony which establishes that National Union has a fiduciary duty to pay more than the cost of repair. More specifically, Defendant seeks to preclude Plaintiff from introducing parts of Mr. Irvine's testimony regarding such a fiduciary duty. Such questions are objectionable because it calls for a legal conclusion. Defendant contends it is customary in the construction industry to accept the lowest qualified bid and determination of loss is made on the basis of cost to restore the insured property to its pre typhoon condition, regardless of whether the insured elects have the repair made or not. Again, Plaintiff reiterates the argument that "insurer has a fiduciary duty to treat its insured fairly and look out for its insured's interests to the same extent it looks out for the insurer's own interests" *Plaintiff's Opposition to Defendant's Motion In Limin, p. 6*. However, that duty does not require the insurer to pay more than the reasonable cost of repair. Defendant contends the Court has already held National Union treated Fidelity fairly, and thus this issue is foreclosed. As stated above, the Court finds evidence of fiduciary duty is not relevant to the claim for breach of contract for failure to pay the costs of repair.

Lastly, Defendant seeks to preclude evidence regarding the compensation of Mr. Irvine for his work adjusting the claim, expenses for travel, and lodging on Guam. Defendant acknowledges the evidence is admissible on the issue of bias. However, this argument could

lead to the conclusion that the insurance company spends all its money to fight the insured's claim, so it should be able to afford to pay the Plaintiff more. Although the Court finds fees and expenses of bringing in an off-island witness not relevant to the issue of the amount of loss, such facts are relevant to the issue of bias and are admissible solely for that purpose.

Alternatively, Defendant submits to minimize prejudice the attorneys can discuss such facts and arguments but set forth in jury instructions that bias or prejudice need not be a basis for any finding. The Court finds the probative value of such testimony to outweigh its prejudicial value and rejects Defendant's request.

**b. Plaintiff's Motion in Limine re: Trial Testimony of Alun Irvine**

This motion is based on the November 14, 2012 Deposition of Alun Irvine. At that time, both parties stipulated to the scope of admissible testimony to be limited to the events leading up to Alvun Irvine's letter dated May 9, 2003. Plaintiff requests the Court to limit the testimony of Alvun Irvine, precluding the following parts of his deposition 1) the information that various contractors told him about their costs to repair certain typhoon damages; 2) his opinion as to the total amount for the repair of the typhoon damages that Plaintiff sustained; and 3) his opinion that the estimate of the total amount of the repair by another was overstated or excessive. The Court will now address each Plaintiffs claims regarding parts of Mr. Irvine's testimony.

Plaintiff submits the information various contractors told Mr. Irvine about their costs to repair the typhoon damages is hearsay and as such is inadmissible at trial. The only hearsay exception which would allow such hearsay testimony is GRE Rule 703, expert witness testimony. However, Mr. Irvine is an adjuster of insurance claims for insurers and not an expert witness as defined under GRE Rule 702 as to his total amount opinion. Defendant rebuts this contention and argues insurance adjusters inhabit a gray area, generally known as hybrid

fact/expert witnesses in which their percipient observations often share into opinion territory and are normally not required to qualify as experts. *St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.*, CIV.A.05 2115 CKK, 2007 WL 1589495 (D.D.C. June 1, 2007) aff'd sub nom. *Capital Sprinkler Inspection, Inc. v. Guest Services, Inc.*, 630 F.3d 217 (D.C. Cir. 2011).

Assuming *arguendo* Mr. Irvine qualifies as an expert witness, Plaintiff submits its prejudicial effect outweighs its probative value in assisting the jury in evaluating the expert's opinion. Plaintiff contends allowing such hearsay would deny the Plaintiff's ability to cross-examine the contractor's representatives involved as to the scope and reasonableness of such contractor's repair estimates. Furthermore, prior to disclosure of such testimony, Defendant must show that other experts in the same field reasonably rely on such hearsay in formulating their opinions. The Court in *St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.*, found Mr. Dunaway, an insurance adjuster, could testify to the information he learned from his pre-litigation inquiries and receipt of informational and materials, including typical insurance adjusters inquiries made of third-parties to secure damage assessments relevant to the insurance claim. Accordingly, the Court finds other insurance adjusters in the same field reasonably rely on such hearsay in formulating their opinions and holds Mr. Irvine to be an hybrid fact/expert witness.

In addition, Defendant must comply with Federal Rule 26(a)(2)(a) and (b) which states

"(2) Disclosure of Expert Testimony.
    (A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Guam Rules of Evidence.

    (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a *witness who is retained or specially employed to provide expert testimony* in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or

other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years."

On February 4, 2010, Defendant filed its first initial disclosures as a precautionary measure due to the uncertainty of Mr. Irvine's status as an expert witness. Defendant provided qualifications of Mr. Irvine, listing of other cases in which the witness has testified as an expert at trial or by deposition, and compensation to be paid in their initial disclosures. Mr. Irvine's opinions and basis for the opinion are supplemented and set forth in his letter to Gary Johnson on May 9, 2001, which is attached to National Union's Motion to Dismiss as Exhibit D. The Court finds a proper foundation was laid out in the initial disclosures sufficient for the written report required under Federal Rule 26(a)(2)(b) for expert testimony.

Secondly, Plaintiff seeks to preclude Mr. Irvine's total amount opinion as inadmissible hearsay. Plaintiff argues Mr. Irvine is not an expert in mold remediation, air conditioning repair, electrical repair or roof repairs. As such, his opinion was based on improper information and should not be allowed to be presented to the jury. However, since the Court ruled Mr. Irvine is a hybrid fact/expert witness and a foundation has been laid, hearsay would be a permissible basis to formulate his opinion. Defendant contends even if Mr. Irvine does not qualify as an expert, it is core component of the adjuster's job to determine the cost of labor and materials in order to properly calculate loss. This necessarily includes obtaining quotes for such costs. See *St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.*, CIVA.05 2115 CKK, 2007 WL 1589495 (D.D.C. June 1, 2007). As it is customary for insurance adjuster to use hearsay to formulate a basis for his opinion, the Court will admit Mr. Irvine's total amount opinion.

Lastly, Plaintiff seeks to preclude Mr. Irvine's opinion about whether Mr. Gary Johnson's estimate was overstated or excessive. Both parties stipulated at Mr. Irvine's deposition that his testimony would be limited to the events up to May 9, 2003. Plaintiff submit despite the stipulated agreement, Defense counsel solicited opinion testimony about events outside the scope of the agreement. On the other hand, Defendant submits this testimony is within the scope of the stipulation as the estimate was received on March 3, 2003, which is more than two months before May 9, 2003. Moreover, as stated in the above argument, the Court finds Mr. Irvine's job required him to consider any estimates, quotes or other relevant information proffered by the insured to explain his basis for his opinion. Without such information, Mr. Irvine would not be able to adequately explain his reasoning without both stating what he did and did not agree upon. Accordingly, the Court denies Plaintiff's request to preclude opinion testimony regarding Gary Johnson's estimate of the typhoon damages.

## CONCLUSION

Based on the foregoing, the Court GRANTS in part Defendant's motion in limine and precludes Plaintiff's proposed exhibits and testimony on the issues of unfair treatment, fiduciary duty, and economic disparity. In addition, the Court DENIES in part with regard to the testimony of other contractors about the reasonableness of the typhoon damage quotes and compensation paid to Mr. Irvine, which is admissible for purpose of showing bias.

As stated above, the Court holds Mr. Alun Irvine as a hybrid fact/expert witness and that the Defendant has complied the initial disclosures needed for expert testimony. Accordingly, the Court DENIES Plaintiff's motion in limine to preclude the following parts of Mr. Irvine's testimony: 1) the information that various contractors told him about their costs to repair certain typhoon damages; 2) his opinion as to the total amount for the repair of the

typhoon damages that Plaintiff sustained; and 3) his opinion that the estimate of the total amount of the repair by another was overstated or excessive.

SO ORDERED, this 7th day of May 2013.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam


I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam.

MAY 0 7 2013

Teresita S. Perez
Deputy Clerk, Superior Court of Guam